IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LINDA SCHMIDT,** *individually, and as the Special Administrator of David Schmidt, deceased,* | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 21-cv-1036-DDC-TJJ ) |
| **BULL ATTORNEYS, P.A.,** *formerly known as* **Brad Pistotnik Law, P.A.,** | ) ) ) ) ) |
| Intervenor Plaintiff, | ) ) |
| v. | ) ) |
| **AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,** | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel Production of the Entirety of Plaintiff's File in Possession of Bull Attorneys, F/K/A Brad Pistotnik Law, P.A. (ECF No. 71). Plaintiff asks the Court to compel Intervenor Plaintiff Bull Attorneys, P.A., formerly known as Brad Pistotnik Law, P.A. ("Intervenor"), to produce as part of its Fed. R. Civ. P. 26(a)(1) initial disclosures all the files, papers, and any documents, electronic exhibits, billing statements, ledgers, and otherwise in the file related to Plaintiff's representation by Intervenor. Intervenor has filed a response in opposition to the motion and Plaintiff has filed her reply. As set forth below, the Court will grant Plaintiff's motion.

**I.  Relevant Background**

Intervenor represented Plaintiff and her husband David Schmidt [1] following a vehicle-pedestrian collision in which David sustained injuries. Intervenor represented Mr. and Mrs. Schmidt for the purposes of Plaintiff's negligence claim against the tortfeasor and his liability insurer, Defendant American Family Mutual Insurance Company, and the worker's compensation claim. Those claims were settled before Mr. Schmidt's death. Following his death, Mr. Schmidt's heirs executed a fee agreement with Intervenor to continue prosecuting claims arising out of the collision, and Plaintiff was named Special Administrator of her husband's estate. On February 8, 2021, Intervenor filed the uninsured motorist claim that is the subject of this action. American Family also issued the policy to the Schmidts for uninsured motorist coverage. On August 10, 2021, the parties conducted an unsuccessful mediation, and within one month Plaintiff had decided to terminate Intervenor's representation and had retained her current counsel, Matthew Bretz.

Intervenor filed an attorney's lien and served it on both Mr. Bretz and American Family, followed by a motion to intervene which the court granted over Plaintiff's opposition. In response to Intervenor's complaint in intervention (ECF No. 60), Plaintiff filed a motion to dismiss (ECF No. 70). The court held a Status Conference and gave the parties a deadline to exchange their Fed. R. Civ. P. 26(a)(1) initial disclosures and the documents identified therein. In response to Plaintiff's request for the entirety of the client file as part of the initial disclosures, Intervenor announced it would produce only the portion of the client file dealing with the uninsured motorist claim because the worker's compensation and liability claims were resolved and the uninsured motorist claim was the only claim remaining when Plaintiff terminated

---

[1] Plaintiff and her husband David Schmidt entered into a contingency fee contract with Intervenor on May 5, 2000. Mr. Schmidt died on October 17, 2020.

2

Intervenor's representation.

During a June 6, 2022 Status Conference, the undersigned Magistrate Judge discussed with counsel the scope of Intervenor's Rule 26 initial disclosures, and imposed a deadline for Plaintiff to file a motion if the parties were unable to resolve the issue. Plaintiff timely filed this motion.

The Court finds the parties have conferred in an attempt to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

## II.     Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[2]

Considerations of both relevance and proportionality now govern the scope of discovery.[3] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[4] Information still "need not be admissible in evidence to be discoverable."[5] The amendment

---

[2] Fed. R. Civ. P. 26(b)(1).
[3] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.
[4] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).
[5] Fed. R. Civ. P. 26(b)(1).

deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[6]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[7] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[8] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[10] Relevancy determinations are generally made on a case-by-case basis.[11]

Rule 1.16 of the Kansas Rules of Professional Conduct requires a lawyer whose representation has been terminated to return to the client "papers and property to which the client is entitled," but allows the lawyer to "retain papers relating to the client to the extent permitted

---

[6] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.
[7] *Id.*
[8] *Id.*
[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).
[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).
[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

by other law."[12] And as the Comment to the rule states more specifically, retention of client papers as security for a fee is likewise limited to the extent permitted by law.[13]

**III.   Analysis**

Plaintiff relies on two grounds to support her request. First, Plaintiff contends Intervenor is required by Kansas Rule of Professional Conduct 1.16 to return to its former client her entire file. Intervenor essentially bypasses the issue in a single sentence in its response, asserting the rule does not explain how Intervenor's representation in the worker's compensation and liability claims affected the value of the uninsured motorist claim, nor does it "explain why the language of the Kansas attorney-lien statute does not foreclose this analysis."[14]

Plaintiff does not cite Rule 1.16 for the proposition that her uninsured motorist claim decreased in value because of Intervenor's representation in the earlier claims. Instead, Plaintiff invokes the rule to raise the issue of Intervenor's ethical obligation to return her files to her as she has requested. And although Intervenor does not explain the comment regarding the Kansas attorney-lien statute, Kan. Stat. Ann. § 7-108, the statute does not provide Intervenor with an exception to its obligations under Rule 1.16. The statute reads as follows:

> An attorney has a lien for a general balance of compensation upon any papers of his or her client which have come into the attorney's possession in the course of his or her professional employment, upon money in the attorney's hands belonging to the client, and upon money due to the client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, from the time of giving notice of the lien to the party; such notice must be in writing, and may be served in the same manner as a summons, and upon any person, officer or agent upon whom a summons under the laws of this state may be served, and may also be served upon a regularly employed salaried attorney of the party.[15]

---

[12] KRPC 1.16(d).
[13] KRPC 1.16(d) cmt.
[14] ECF No. 74 at 3.
[15] Kan. Stat. Ann. § 7-108.

Intervenor has withheld that portion of Plaintiff's file related to its representation on the liability insurance policy and the worker's compensation claim, both of which are concluded and for which Intervenor received compensation. The complaint in intervention alleges Intervenor is entitled to a portion of the attorney fees recoverable from the recently settled uninsured motorist claim, and the lien Intervenor asserts relates only to the uninsured motorist claim. The attorney-lien statute is not implicated because Intervenor does not assert a lien on the part of Plaintiff's file it has withheld from Plaintiff.

While the Court agrees that Rule 1.16 imposes an ethical duty on Intervenor, the rule does not provide a legal basis for deciding Plaintiff's motion to compel. "[A]an attorney's violation of the ethics rules cannot create a cause of action available to adverse litigants or even to clients. This is because the ethics rules do not impose a legal duty on the attorney owing to either a client or a third party. Occasionally, attorney conduct which violates an ethics rule may also violate an independent legal duty, and a cause of action may ensue. It is the violation of the independent legal duty, not the ethics rule, that gives rise to a cause of action."[16]

The Preamble to the Kansas Rules of Professional Conduct confirms this approach:

> Violation of a Rule [of Professional Conduct] should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are involved by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.[17]

---

[16] *OMI Holdings, Inc. v. Howell*, 918 P.2d 1274, 1288 (Kan. 1996).
[17] KRPC pmbl.[20]. An example of a disciplinary action involving a violation of Rule 1.16 is *Matter of Deines*, 430 P.3d 437, 444 (Kan. 2018), where the Kansas Supreme Court found respondent

The Court therefore turns to Plaintiff's second ground, relevance. This motion is atypical in that motions to compel generally follow written objection to a discovery request. In this instance, however, Intervenor simply advised Plaintiff it would not include in its Rule 26(a) initial disclosures that portion of Plaintiff's file related to the uninsured motorist claim.[18] Intervenor's basis for refusal appears in its response to the motion. Intervenor does not contend that producing the rest of the file would be unduly burdensome, disproportional to the needs of the case, or that it is protected by privilege or otherwise not discoverable. The language of the response suggests Intervenor deems the information irrelevant to the attorney's fee issue. Plaintiff disagrees, arguing Intervenor's handling of the liability claim, including its failure to obtain court approval of an allocation of the settlement proceeds to a loss of consortium claim, set up Plaintiff and the other heirs for a $250,000.00 credit in the uninsured motorist claim.[19] Keeping in mind that all three claims arose out of the same accident, damages under the various claims are cumulative, and Intervenor filed and prosecuted all three claims on Plaintiff's behalf,[20] the entirety of Plaintiff's file is relevant to the Intervenor's claim for attorney's fees for

---

violated KRPC 1.16(d) when he failed to timely forward his former client's file, pleadings, documents, and deposition transcripts to subsequent counsel, and he separately violated KRPC 1.16(d) when he failed to return his former client's file to another as directed, following the termination of representation.

[18] Although Intervenor questions whether Plaintiff may move to compel under Fed. R. Civ. P. 37 when the Court has not ordered Intervenor to produce the files at issue as part of its Rule 26(a) initial disclosures, it does concede a motion to compel is contemplated by Fed. R. Civ. P. 26(a)(3)(A) and does not insist that Plaintiff serve a written discovery request for the files before the Court considers this issue.

[19] As Plaintiff points out, Intervenor settled the liability claim without obtaining court approval. Therefore, no damages were allocated to a loss of consortium claim instead of generally for the Estate's claim for pain and suffering, which precluded Plaintiff from avoiding a $250,000 credit to the uninsured motorist claim.

[20] Intervenor represented Plaintiff on the uninsured motorist claim through mediation. It was not until after the mediation that Plaintiff determined she no longer wished to have Intervenor represent her.

the uninsured motorist claim and to Plaintiff's defenses thereto. Accordingly, Intervenor must produce Plaintiff's entire file.

## IV.     Sanctions

Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court must, after giving an opportunity to be heard, require the responding party to pay the movant's reasonable expenses and attorney's fees incurred in making the motion.[21] The court must not order payment, however, if the opposing party's nondisclosure, response, or objection was substantially justified, or if other circumstances make an award of expenses unjust.[22]

In his motion, Plaintiff makes no request for sanctions, and the Court finds under the circumstances that none should be imposed. In a Status Conference where Plaintiff first raised this issue but no substantive argument ensued, the undersigned indicated a preliminary view that Intervenor would not need to produce Plaintiff's entire file and directed Plaintiff to file this motion if the parties were unable to resolve the issue. Intervenor understandably did not produce the documents. Accordingly, the Court will not impose sanctions.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel Production of the Entirety of Plaintiff's File in Possession of Bull Attorneys, F/K/A Brad Pistotnik Law, P.A. (ECF No. 71) is **GRANTED.**

**IT IS FURTHER ORDERED THAT** Intervenor Bull Attorneys, F/K/A Brad Pistotnik Law, P.A. shall produce the entirety of the files related to its representation of Plaintiff and David Schmidt within **ten (10) days** of the date of this Order.

---

[21] Fed. R. Civ. P. 37(a)(5)(A).
[22] Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).  The rule also provides no such payment shall be awarded if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action.  Fed. R. Civ. P. 37(a)(5)(A)(i).  The Court has found to the contrary.

**IT IS SO ORDERED.**

Dated this 7th day of November, 2022, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge